___

**SO ORDERED,**



*Judge Jason D. Woodard*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TIFFANY K. LEWIS, | ) | Case No.: 23-13408-JDW |
| | ) | |
| Debtor. | ) | Chapter 13 |

---

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR CONTEMPT AND OTHER RELIEF AGAINST U.S. BANK NATIONAL ASSOCIATION, ET AL. NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING (Dkt. 33)

Before the Court is a *Motion for Contempt and Other Relief Against U.S. Bank National Association, et al. NewRez LLC DBA Shellpoint Mortgage Servicing* (the "Motion")[1] filed by the debtor, Tiffany Lewis, and the response[2] filed by U.S. Bank National Association, not in its individual capacity, but

---

[1] (Bankr. Dkt. # 33).
[2] (Bankr. Dkt. # 40).

1

solely as Trustee of NRZ, serviced by NewRez LLC DBA Shellpoint Mortgage Servicing ("Shellpoint").

The Motion seeks attorney's fees and sanctions against Shellpoint for its repeated failure to endorse an insurance check jointly payable to Shellpoint and the debtor so she could repair her home. This failure comes after this Court ordered Shellpoint to endorse the check last year. The Court held an evidentiary hearing on the Motion on March 26, 2024, where attorney Vallrie Dorsey appeared on behalf of the debtor and attorney Karen A. Maxcy appeared on behalf of Shellpoint. After the hearing, the Court took the Motion under advisement but again ordered Shellpoint to immediately endorse the insurance check and deliver it to Ms. Dorsey. The Court further ordered that a sanction of $100.00 per day would be imposed for every day after April 2 that the check had not been received by Ms. Dorsey.

The Motion is due to be granted, sanctions imposed against Shellpoint, and attorney's fees awarded to the debtor. The Court awards the debtor the requested attorney's fee of $1,000.00 and a sanction of $7,750.00.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a), and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc*

2

*Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (C), (E), and (O).

## II. FINDINGS OF FACT[3]

The facts alleged by the debtor in the Motion were proved at the hearing. On February 7, 2023, the debtor experienced a water incursion in her home, which caused severe damage to the walls and floors. The debtor gave uncontroverted credible testimony of her repeated efforts to obtain the endorsed insurance check from Shellpoint and Shellpoint submitted no evidence mitigating its liability or the debtor's damages. Shellpoint holds a deed of trust on the home and is named as a joint loss payee on the debtor's home insurance policy issued by Farm Bureau Casualty Insurance Company ("Farm Bureau"). On March 3, 2023, Farm Bureau issued a jointly payable check to the debtor and Shellpoint in the amount of $7,749.54 for the repairs.

The debtor contacted Shellpoint and requested that the check be endorsed so that necessary repairs could be made. After no clear answer was received, Ms. Dorsey then sent written correspondence to Shellpoint's attorney seeking assistance. Counsel for Shellpoint suggested that the debtor contact Shellpoint directly, which both the debtor and Ms. Dorsey continued to do.

---

[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

3

Shellpoint eventually requested a contractor's contract, W-9, and the insurance check signed by the debtor. Previous correspondence and telephone conversations with Shellpoint led the debtor to believe that upon receipt of the documents, Shellpoint would endorse the check and the debtor would receive the funds to begin the repairs. All required documents were sent to Shellpoint. Shellpoint then returned the check to the debtor, claiming that it had not been endorsed by the debtor, which was untrue. Eventually, the check became stale, and the debtor was then forced to request a replacement check, which Farm Bureau issued on October 26, 2023.

At that point, the debtor was exasperated with Shellpoint's delays while she continued to suffer further damage to her home. On November 21, 2023, she filed a *Motion to Compel Turnover of Exempt Insurance Proceeds*.[4] When Shellpoint failed to respond to that motion, the Court entered an *Order Granting Motion to Compel* on December 8, 2023.[5] That order granted the motion and required Shellpoint to endorse the insurance check. Ms. Dorsey sent a copy of that order to Shellpoint's loss department via email on December 8 and via overnight mail on December 12, 2023.

Shellpoint sent an email to Ms. Dorsey on January 2, 2024, stating that it had endorsed the check and mailed it back to the debtor on December 26.

---

[4] (Bankr. Dkt. # 9).
[5] (Bankr. Dkt. # 18).

4

When the debtor received the check on January 2, it had not been endorsed, and a letter was attached requesting that the debtor endorse the check and mail it back to Shellpoint. Shellpoint's actions were in direct violation of the Court's order entered December 8, 2023.[6]

As of the date of the hearing, the debtor still had not received the endorsed check. She had been forced to temporarily relocate from her residence because she and her children had fallen through the floor on numerous occasions. In addition, Farm Bureau sent the debtor notice that it does not intend to renew her policy when it expires.

The debtor requests that the court impose sanctions against Shellpoint in the amount of $7,750.00. The debtor further requests that the court order Shellpoint to pay attorney's fees in the amount of $1,000.00 to reimburse her for legal costs related to Shellpoint's actions.

### III. CONCLUSIONS OF LAW

Contempt sanctions are classified as either civil or criminal depending on the "character and purpose."[7] Civil contempt sanctions are imposed to coerce a recalcitrant party into compliance with the court's order or to compensate an injured party for losses resulting from the contempt.[8] Criminal contempt sanctions are meant to punish and vindicate the authority of the

---

[6] *Id.*
[7] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).
[8] *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990).

court.[9] The sanctions contemplated here are purely civil; bankruptcy courts may utilize criminal contempt only for conduct that happens in the presence of the court.[10]

It is well-settled that bankruptcy courts in the Fifth Circuit have civil contempt powers.[11] Explaining § 105 of the Bankruptcy Code[12], the United States Court of Appeals for the Fifth Circuit concluded "that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code."[13] "[F]ederal courts have inherent power to police themselves by civil contempt, imposition of fines, the awarding of costs and the shifting of fees."[14] The Fifth Circuit has held that a court's contempt power is broad, pragmatic, consistent with due process, and reaches where it must "to prevent insults, oppression, and experimentation with disobedience of the law."[15] A party commits contempt when he violates "a definite and specific order of the court" that required him

---

[9] *Id.*
[10] *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 266 (5th Cir. 2009).
[11] *Placid Refin. Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 612-13 (5th Cir. 1997).
[12] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532. Unless otherwise noted, all statutory references herein are to the Bankruptcy Code.
[13] *Terrebonne*, 108 F.3d at 613.
[14] *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990).
[15] *Ingalls*, 588 F.3d at 266.

"to perform or refrain from performing a particular act or acts with knowledge of the court's order."[16]

Generally, courts first apply the least onerous sanction to coerce compliance with the court's order.[17] If the party does not comply, then the court may increase the initial sanction or impose a more onerous sanction. Shellpoint had multiple opportunities to comply with orders from this Court, yet all previous attempts to force compliance have proven ineffective.

The debtor's requested compensatory sanction of $7,750.00 simply mirrors the amount of the insurance check but is both necessary and appropriate. Shellpoint's refusal to cooperate with the debtor and to comply with this Court's prior order resulted in the debtor and her children suffering injuries, being displaced from their home for an extended period of time, and losing insurance coverage on the home altogether. The egregious conduct by Shellpoint easily meets the standard and the amounts requested by the debtor fall well within the range of reasonableness. In fact, this Court considers the request to be on the low end of the spectrum considering the extensive monetary damage and inconvenience caused by Shellpoint's inept handling of what should have been a routine matter by an entire department that exists

---

[16] *Edwards Fam. P'ship v. Johnson (In re Cmty. Home Fin. Serv.'s Corp.)*, 32 F.4th 472, 487 (5th Cir. 2022); *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999) (citations omitted).
[17] *Krim v. First City Bancorporation of Tex. Inc. (In re First City Bancorporation)*, 282 F.3d 864, 867 (5th Cir. 2002).

to handle these situations. In addition, Shellpoint has ignored this Court's prior order.

Ms. Dorsey has pursued the insurance proceeds through two bankruptcy cases, communicated with Shellpoint and its attorney multiple times, filed multiple motions related to the check(s), and appeared in court multiple times. Her requested attorney's fee of $1,000.00 is also more than reasonable.

In addition to the sanctions and attorney's fees awarded for Shellpoint's past acts, it became clear at the hearing that it was still necessary to coerce Shellpoint to deliver the endorsed check. It was announced in open court that Shellpoint would have 7 days from the date of the hearing (March 26, 2024) within which to endorse the check and return it to the debtor. For each day that the endorsed check was not received by the debtor, beginning on Wednesday April 3, 2024, the debtor will be awarded an additional $100.00.

## IV. CONCLUSION

The evidence was clear that there were repeated efforts by the debtor to garner Shellpoint's cooperation and Shellpoint had no real defense for its failure to cooperate. It has been over a year that the debtor has had to suffer the appalling condition of her home while the money necessary to repair it has been wrongfully kept from her. The debtor's requested awards of $7,750.00 in compensatory sanctions and $1,000.00 in attorney's fees are due to be granted, as well as an additional $100.00 per day for every day after April 2, 2024, that

8

the endorsed check was not in the debtor's possession. The Court deems these sanctions reasonable, and in fact, less than this Court would have awarded if more had been requested. Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED** that the *Motion* is **GRANTED**. The debtor is **AWARDED** $7,750.00 as compensatory sanctions and $1,000.00 in attorney's fees, for a total award of $8,750.00. To be clear, the $7,750.00 award is to be paid by Shellpoint as a sanction. Shellpoint has an obligation to immediately tender the endorsed insurance check to the debtor. Delivery of the check does not satisfy the sanctions award.

**IT IS FURTHER ORDERED**, **ADJUDGED**, and **DECREED** that an additional sanction of $100 per day is **IMPOSED** for every day after April 2, 2024, that Ms. Dorsey has not received the endorsed check.

**IT IS FURTHER ORDERED**, **ADJUDGED**, and **DECREED** that the debtor **SHALL FILE** a notice of the date the check was received within 7 days of the entry of this order. Shellpoint shall have 7 days to object to the debtor's notice if it disagrees with the delivery date. If an objection is filed by Shellpoint, an evidentiary hearing will be set for the sole purpose of determining the delivery date of the check. Otherwise, this Court will enter an order supplementing this order with the final sanctions award.

##END OF ORDER##